UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BAUSCH & LOMB INCORPORATED,<br><br>                                      Plaintiff,<br>- vs -<br><br>MIMETOGEN PHARMACEUTICALS INC.,<br><br>                                      Defendant. | **COMPLAINT**<br><br>Civ. Action No. _____ |

Plaintiff Bausch & Lomb Incorporated ("B+L"), by and through its attorneys, Nixon Peabody LLP, as and for its Complaint against Defendant Mimetogen Pharmaceuticals Inc. ("Mimetogen"), alleges upon information and belief as follows:

### PARTIES

1. Plaintiff B+L, a global provider of eye-care products, is a New York corporation with a place of business located at 1400 North Goodman Street, Rochester, New York 14609.

2. Defendant Mimetogen is a corporation organized under the laws of the province of Quebec, Canada, with its principal place of business at 1000 de la Gauchetière Street West, Suite 900, Montréal, Québec, H3B 5H4, Canada.

### JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because the amount in controversy exceeds the sum of $75,000 and is between B+L, a citizen of New York, and Mimetogen, a citizen of a foreign state.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (3). A substantial part of the events or omissions giving rise to B+L's claim described below occurred in the Western District of New York. In the alternative, Mimetogen is subject to personal

jurisdiction within the Western District of New York pursuant to New York Civil Law and Procedure section 302(a)(1) as it came into the Western District of New York to transact business with B+L related to the contract that is the subject of this dispute.

## FACTUAL BACKGROUND

5. On July 17, 2013, Mimetogen and B+L executed a Development Collaboration and Exclusive Option Agreement (the "Agreement"), to be governed and construed in accordance with New York law.

6. The Agreement governs the development, licensing and commercialization of Mimetogen's "MIM-D3 Technology," as defined in Section 1.36 of the Agreement.

7. MIM-D3 ophthalmic solution is intended to be used as a treatment of dry eye.

8. The Agreement contemplated and required Mimetogen to use commercially reasonable efforts to conduct an Initial Phase III Trial, and such additional clinical trials as the Agreement might require, of certain products containing Mimetogen's MIM-D3 Technology in the United States.

9. Under Section 5.1 of the Agreement, Mimetogen granted B+L an exclusive option (the "Option") to obtain an exclusive, worldwide license to the MIM-D3 Technology to develop and commercialize certain products containing the MIM-D3 Technology under certain circumstances.

10. Under Section 5.5(c) of the Agreement, if the Initial Phase III Trial was "Partially Successful, Inconclusive, or Not Successful," as defined in Sections 1.45, 1.25, and 1.41 of the Agreement, B+L had the right, in its sole discretion, to exercise, extend, or not exercise the Option under Section 5.1 of the Agreement.

11. If the Initial Phase III Trial results were "Not Successful", and B+L did not exercise or extend the Option, no further payments will be due to Mimetogen.

12. Mimetogen conducted an Initial Phase III Trial of MIM-D3 Technology in the United States.

13. Based upon a formal meeting with the U.S. Food & Drug Administration to discuss the results of the Initial Phase III Trial, and the formal minutes of that meeting, B+L determined that the Initial Phase III Trial was "Not Successful" as that term is defined in the Agreement.

14. Under the terms of the Agreement, unless extended, the Option ended on August 31, 2014.

15. On or about August 29, 2014, B+L notified Mimetogen that it was not going to exercise or extend the Option, and because the Initial Phase III Trial was "Not Successful," no further payments would be due from B+L to Mimetogen.

16. Thereafter, Mimetogen notified B+L that it disputed whether the Initial Phase III Trial was "Not Successful" and demanded that B+L make a non-refundable payment of Twenty Million Dollars ($20,000,000) to Mimetogen.

### FIRST CAUSE OF ACTION
**(Declaratory Judgment)**

17. Plaintiff repeats and re-alleges each and every allegation in Paragraphs 1 through 16 of this Complaint as if fully set forth herein.

18. A genuine dispute has arisen between B+L and Mimetogen over whether the Initial Phase III Trial was "Not Successful", under the terms of the Agreement, and whether B+L owes any further payments to Mimetogen.

19. Mimetogen claims that it is entitled to an additional Twenty Million Dollars ($20,000,000) and B+L claims that it is not required to make any further payments to Mimetogen.

20. A judicial declaration of the parties' rights, duties, and obligations is necessary and appropriate at this time, pursuant to 28 U.S.C. §§ 2201 and 2202, under the facts and circumstances alleged above, for B+L and Mimetogen to ascertain their respective rights, duties, and obligations with respect to the Agreement, and any further obligations under the Agreement.

## DEMAND FOR JURY TRIAL

21. B+L demands a trial by jury of all issues so triable.

**WHEREFORE,** B+L demands:

(1) A declaration that the Initial Phase III Trial was "Not Successful," under the language of the Agreement;

(2) A declaration that B+L is not obligated to make any further payments to Mimetogen under the Agreement, and

(3) Such further relief as the Court deems just and proper.


NIXON PEABODY LLP

Date:  November 13, 2014          By:  s/ Carolyn G. Nussbaum
                                       Carolyn G. Nussbaum, Esq.
                                       Terence L. Robinson, Jr., Esq.

                                       1300 Clinton Square
                                       Rochester, NY 14604
                                       Tel.:  (585) 263-1000
                                       cnussbaum@nixonpeabody.com
                                       trobinson@nixonpeabody.com
                                       *Attorneys for Plaintiff Bausch & Lomb Incorporated*